[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
The captioned matter is a dissolution action.
FACTS
After trial, the following facts are found:
 The plaintiff, whose maiden name was Margaret Labieniec, and the defendant were married on November 15, 1975, in Berlin, Connecticut;
 One of the parties resided continuously within the State of Connecticut for the 12 months immediately preceding the date of the filing of the complaint in this case;
 The parties have two minor children, issue of their marriage, whose names and dates of birth are as follows:
James John Scarrozzo ("James") — CT Page 1280 September 29, 1982, and
 Kristi Ann Scarrozzo ("Kristi") — January 7, 1988.
 No other children have been born to the plaintiff since the marriage of the parties;
 The marriage of the parties has broken down irretrievably;
 Neither the State of Connecticut nor any Connecticut municipality has contributed to the support or maintenance of either of the parties or either of their minor children;
 The highest educational degree achieved by the plaintiff is a Masters, and the highest achieved by the defendant is a Bachelors;
 The plaintiff is trained in, and has at different times been employed in, the education field;
 The defendant was, until 1986, engaged in sales and purchasing for a manufacturer;
 At the time the parties were married, the plaintiff's earnings were larger than the defendant's;
 The parties met in 1969, and they dated from then until their marriage in 1975;
 At the time the parties were married, the defendant's assets consisted of an automobile and a checking account with an unknown balance;
 Approximately six months after the parties married, the plaintiff was stricken with an undiagnosed illness that caused dizziness and vomiting, as a result of which the plaintiff was unable to work for approximately five months;
In 1979 or 1980, the plaintiff had an affair with CT Page 1281 another man, and when the defendant learned of that affair, the parties separated for approximately two months;
 Following their two-month separation, the parties reconciled and their marriage appeared to be healthy until November 1992, when the plaintiff told the defendant she was unhappy in the marriage;
 The plaintiff moved out of the family home in June 1993, and James and Kristi have continued since then to reside in the family home with the defendant;
 The plaintiff's family started and operated a feed store known as A.S. Labieniec (the "store"), which is now owned and operated by a corporation known as A.S. Labieniec Inc. ("Labieniec Inc.");
 In August 1983, the plaintiff's father, who had operated the store, died, and about that time the plaintiff and her sister, Barbara Ryba, assumed active roles in the management of the store;
 Upon the death of her father, the plaintiff became one of three beneficiaries under a trust established by her father (the "trust"). The trustee of the trust has the discretionary authority to make distributions and loans to the plaintiff and to the other beneficiaries. The assets in the trust now have a market value of approximately $277,000;
 Between April 7, 1988 and April 2, 1993, the plaintiff received seven distributions from the trust, totalling $36,830,24, which were expended by her for family purposes;
 The parties received a mortgage loan of $60,000 from the trust on July 1, 1986 on a house formerly owned by the parties, as well as a mortgage loan of $74,000 on November 1, 1987 on a house on Savage Hill Road, Berlin, Connecticut, which is still owned by the parties (the "Savage Hill property");
CT Page 1282
 On March 30, 1995, the plaintiff asked the trustee of the trust to have the trust lend her $50,000, and that request was denied. Prior to that denial, all of the plaintiff's requests for distributions or loans from the trust had been granted;
 The plaintiff received gifts from her family of $10,000 toward a down payment on the parties' first house in Higganum and of $33,700 toward the purchase of a house by the parties in Vermont;
 From August or September 1983 until February 1992, the plaintiff's mother made gifts to the plaintiff of $450 per month for ten months each year, totalling approximately $38,000, all of which was spent by her for family purposes;
 The defendant's parents gave him $5,000 toward a down payment on the parties' first house in Higganum;
 During their marriage, the parties have owned three houses in Connecticut and one house in Vermont;
 The parties now own only one house, the Savage Hill property;
 The Savage Hill property has a value of $219,000, and it is encumbered by mortgages totalling approximately $133,000, including the mortgage to the trust which secures a current balance of approximately $66,500 which will become due at such time, if any, when the plaintiff no longer has an interest in the Savage Hill property;
 The house in Vermont which was formerly owned by the parties was sold, and the proceeds of that sale, $87,162.79, plus any interest which may have accrued in excess of said amount, are now held in escrow by Attorney Susan B. Crawford (the "Vermont escrow");
CT Page 1283
 While the parties owned the house in Vermont, the defendant performed maintenance on, and made improvements to, it;
 After the death of her father, one-half of the stock of Labieniec Inc. was owned by the plaintiff's mother and one-sixth of that stock was owned by each of the plaintiff, Barbara Ryba and the plaintiff's brother. Because of disputes among family members about the operation of the store, an arrangement was made whereby one-half of the stock of Labieniec Inc. was acquired by the plaintiff and one-half was acquired by Barbara Ryba, after which Labieniec Inc. purchased the stock owned by Barbara Ryba for $125,000. Labieniec Inc. issued its promissory note to Barbara Ryba in that amount as consideration for that purchase, and there is now due on that note approximately $90,000. The plaintiff and the defendant agreed that 70% of the stock of Labieniec Inc. would thereafter be owned by the plaintiff and 30% by the defendant, which reflects their current holdings in Labieniec Inc.;
 One-half of the Labieniec Inc. stock now owned, collectively, by the parties was a gift to the plaintiff from one or more members of the plaintiff's family;
 The plaintiff is now employed 13 hours a week by SERC, for which she is paid $18,000 annually. The plaintiff also works approximately 40 hours per week in the store, for which she receives no salary;
 In 1995, Labieniec Inc. paid the plaintiff $762 for her services in the store, and Labieniec Inc. now provides the plaintiff with a car and pays for one-half the property taxes and insurance on that car, as well as for all gasoline used for business;
 Labieniec Inc. has occasionally paid expenses of the plaintiff's which are of a personal nature;
The plaintiff has an annual earning capacity CT Page 1284 of $35,000, and there is imputed to her trust income of $4,000 annually;
 From 1986 to 1991, the defendant was employed by the store as its manager, and from then until 1994 he was employed by the store in another capacity;
 The defendant is now employed as general manager of Comstock Ferre, a seed and feed business, by which he is paid approximately $45,000 annually;
 The defendant has a right to receive $5,000 in severance benefits from Comstock Ferre if his employment is terminated;
 The defendant is the owner of a life insurance policy on his life issued by Northwestern Mutual which has a cash surrender value of $11,900;
 Neither the store nor Labieniec Inc. has any market value;
 The defendant's one-half interest in the real property known as, and located at, 945 Farmington Avenue, Berlin, Connecticut is subject to a life
 use in the plaintiff's mother. The market value of the fee simple interest in that property is $180,000. The life estate of the plaintiff's mother has a market value of $82,000. Accordingly, the market value of the plaintiff's interest in that property is $49,000. The market value of the plaintiff's interest in that property when she inherited it in 1983 or 1984 was $15,000. The plaintiff's interest in that property has appreciated $34,000 during the marriage of the parties;
 Labieniec Inc. and the defendant are defendants in an action brought by Fleet Bank seeking damages of approximately $1,400 (the "Fleet suit");
CT Page 1285
 The marriage of the parties broke down because the parties developed separate interests and grew apart. That breakdown was not caused by fault of either party;
 The parties contributed equally to the acquisition, preservation and appreciation in value of their assets; and,
 It is likely that, in the future, the parties will have equal earning capacities and equal opportunities to acquire capital assets.
DISCUSSION
 Division of Assets
Except for their tangible personalty, the following is a listing of the assets of the parties indicating with whom title rests and the value assigned, by stipulation of the parties or by the court, to each (the descriptions of some assets are taken from the parties' affidavits, so there may be misspellings and inconsistencies):
 Value of Asset Value of Asset Value of Asset Whose Title Whose Title Whose Title Now Now stands in Now Stands in Stands in Names Description of Plaintiff's Defendant's of Parties Asset Name Name Jointly ---------------------------------------------------------------------------
Value of inherited $15,000 interest in 945 Farmington Avenue at time of inheritance
Appreciation in $34,000 value of interest in 945 Farmington Avenue
Van Kampen IRA $13,294.63
20th Century $ 2,675.39 CT Page 1286
Teacher's $13,563 Retirement Fund
Real estate $ 3,500 deposit
Cash surrender $11,900 value in Mutual Northwestern life policy
Comstock Ferre $ 1,500 severance benefits (Present discounted value)
Alliance Assured $ 177.65
20th Century $ 2,504
Van Kampen $13,294.63
256 Savage Hill Road $85,500 (Equity
Vermont escrow $87,162.79
Luther Medical Products 266.25
UTC stock $ 2,660
PLM Growth Fund $10,763.25
20 Century $ 4,125.46
TOTAL $82,033.02 + $29,376.28 + $190,477.75 =
GRAND TOTAL $301,887.05
Before dividing the assets of the parties, it is necessary to determine which assets are part of, and which are not part of, the marital estate, and to make certain other adjustments. The plaintiff's beneficial interest in the trust and her one-half interest in 945 Farmington Avenue, Berlin, Connecticut, are held CT Page 1287 not to be part of the marital estate, except that the appreciation of that one-half interest, equalling $34,000, is held to be part of the marital estate. The quonset hut on the Farmington Avenue property is held not to have any market value separate from the value assigned to the fee simple interest in that property.
$49,700, representing the following gifts from the plaintiff's parents or distributions from the trust, are found to be marital assets, even though they came to the plaintiff by gift or from the trust, because they were received so long ago that they became part of the fabric of the parties' marriage:
 $10,000 toward down payment on first house;
$33,700 toward Vermont house; and
 $6,000 for driveway on the Savage Hill property.
$5,000, representing the gift from the defendant's family toward the down payment on the parties' first house, is also found to be a marital asset, even though it came to the defendant by gift, because it was received so long ago that it became a part of the fabric of the parties' marriage.
After subtracting from the assets of the parties the sum of $15,000, which represents the original value of the plaintiff's interest in 945 Farmington Avenue which has been held to be outside the marital estate, the value of the assets in the marital estate, exclusive of tangible personalty, is $286,887.05.
In compliance with the stipulation of the parties, the plaintiff is hereinafter awarded the first $794.93 from the Vermont escrow, without having that amount charged to her account. Accordingly, there remains to be distributed, from the marital estate, $286,092.12. That amount shall be divided equally between the parties, as hereinafter provided.
Alimony
Each of the parties has the capacity to be self-supporting, and so no orders relating to alimony are entered in this matter. CT Page 1288
Child Support
The child support order entered hereinafter is premised upon James' living primarily with the defendant and Kristi's living with each party one-half the time. The child support order is also premised on the plaintiff's annual earning capacity of $35,000 plus her imputed annual trust income of $4,000, as well as the defendant's annual income of $45,000.
Attorney's Fees
No attorney's fees are awarded to either party.
Stipulations
The parties have entered into several stipulations, and those stipulations are incorporated into the orders hereinafter set forth.
ORDERS
In fashioning the following orders concerning child support and the assignment of assets, and in deciding not to award alimony or attorney's fees to either party, the court has carefully considered all of the criteria contained in:
 Section 46b-84, C.G.S., concerning child support;
 Section 46b-812, C.G.S., concerning the assignment of assets;
 Section 46b-82, C.G.S., concerning alimony; and,
 Section 46B-62, C.G.S., concerning attorney's fees.
In particular, the court has considered the length of the parties' marriage, the absence of fault by either party for the breakdown of their marriage, the age and health of each of the parties, their respective vocational skills and employability, their respective opportunities for the future acquisition of capital assets and income, their respective needs and the needs of each of their children. CT Page 1289
Dissolution
The marriage of the parties is hereby dissolved, and each of them is declared to be single and unmarried.
Custody, Residence and Visitation
Custody of James and Kristi is awarded to the parties jointly.
James shall reside primarily with the defendant, and the plaintiff shall enjoy the following rights of visitation with James:
 1) Alternate weekends beginning Friday after school, if James takes the school bus to the store, or, if he does not do that, beginning Friday at 6 P.M. (in which case the defendant shall be responsible for transporting James at the beginning of the visitation), and continuing to the succeeding Sunday at 6 P.M.;
 2) On those Thursdays which do not immediately precede one of plaintiff's alternate weekend visitations with James, commencing either at 3:15 p. m., when the plaintiff shall pick up James at the Savage Hill Road property, or, if James takes the school bus or walks to the store, when he arrives there, and continuing until he takes the school bus to school the following morning, or, if there is no school that day, until 6 P.M. that day;
 3) Any other times James chooses to spend with the plaintiff.
Kristi shall spend the following times with the party indicated in each 14-day period:
 With the plaintiff from the close of school on Monday until the close of school on Tuesday;
 With the defendant from the close of school on Tuesday until the close of school on Thursday;
CT Page 1290
 With the plaintiff from the close of school on Thursday until the close of school on Monday;
 With the defendant from the close of school on Monday until the close of school on Wednesday;
 With the plaintiff from the close of school on Wednesday until the close of school on Friday;
 With the defendant from the close of school on Friday until the close of school on Monday.
When Kristi is with the plaintiff on a morning when there is school, the plaintiff shall transport her to school.
On days when there is no school, or when Kristi does not attend school, 6 P.M. shall be substituted in the orders relating to Kristi for the phrase "close of school."
The foregoing to the contrary notwithstanding, James and Kristi shall spend alternate holidays with each parent in accordance with the following schedule, except that they shall spend each Mother's Day with the plaintiff and each Father's Day with the defendant:
 In odd numbered years, the children shall be with the plaintiff from noon on the Saturday preceding Easter until noon on Easter Sunday. In even numbered years, the children shall be with the plaintiff from noon on Easter Sunday until the start of school the following day. In even numbered years, the children shall be with the defendant from noon on the Saturday preceding Easter until noon on East Sunday. In odd numbered years, the children shall be with the defendant from noon on Easter Sunday until the start of school the following day.
 In even numbered years, the children shall be with the defendant from the close of school on the Wednesday preceding Thanksgiving Day. In odd CT Page 1291 numbered years, the children shall be with the plaintiff from the close of school on the Wednesday preceding Thanksgiving until 5 P.M. on Thanksgiving Day.
 In even numbered years, the children shall be with the plaintiff from noon on December 24 until noon on Christmas Day, and they shall be with the defendant from noon on Christmas Day until noon on December 26. In odd numbered years, the children shall be with the defendant from noon on December 24 until noon on Christmas Day, and they shall be with the plaintiff from noon on Christmas Day until noon on December 26.
 Each party shall have a period of two consecutive weeks during the children's summer vacation when both children are with such party, commencing on a Friday and ending on a Sunday at 8 P.M., during which the children's normal schedules with the parties shall be suspended. Each party shall give written notice of the period selected to the other party by June 1 in each year. A party who fails to give timely notice, shall not forfeit such two-week period, but will be preempted from selecting any period which conflicts with the period selected by the other party, if the other party gave timely notice thereof.
 Summer Camp
Each party shall be entitled to enroll one or both of the children in summer camp, provided that, absent a written agreement between the parties to the contrary, the enrolling party shall be solely responsible for all related costs.
Communications Between the Parties
Each party shall maintain a FAX machine at work and at home, and each shall keep the other advised of current FAX numbers. CT Page 1292
All communications between the parties shall be by FAX.
School and Extracurricular Activities
Neither party shall enroll either child in any academic program or extracurricular activity without the approval of the other, other than Summer camp.
Overnight Option
If either party is not personally going to spend a scheduled overnight with one or both of the children, and a non-related third party is going to be a caretaker, the other party shall have the option of personally spending the overnight with the child or children.
Child Support
The plaintiff shall pay to the defendant child support of $70 per week. To the extent that this figure may deviate from the child support guidelines, it is found that such a deviation is appropriate and equitable because the parties will have shared custody of one of the children and the other child will reside primarily with the defendant, thereby creating a situation approaching split custody, so that any such deviation is in the best interests of the children.
Health Insurance
The defendant shall continue to provide for each of the children the health insurance which he is presently providing for them through his employment, or its equivalent, and the provisions of § 46b-84(d) of the General Statutes are made expressly applicable to the parties and the children. The plaintiff shall reimburse the defendant for one-half the incremental cost to him of such coverage.
Uninsured Medical and Dental Expenses
Each of the parties shall pay one-half of all uninsured medical and dental expenses (which shall be broadly construed) incurred on behalf of each of the children, provided, however, that the defendant shall pay all orthodontic expenses which have been or will be incurred on behalf of James. CT Page 1293
Life Insurance
The defendant shall maintain, and pay all premiums therefor, life insurance on his life in the face amount of $50,000 for each of the children until such child becomes 22 years old or completes college, whichever occurs sooner.
Checks in Escrow
Checks totalling $1,559.50 are now being held in escrow, pending orders of the court. The defendant's attorneys, Friedle and Ustach, are holding some of those checks, totalling $872.
Friedle Ustach are ordered to disburse to the plaintiff $322.17, and all other escrowed checks are awarded to the defendant. Each party shall do all things necessary or convenient to implement the orders contained in this paragraph, including the immediate endorsement and delivery of checks upon presentation and the execution of all documents required for the reissuance of any stale checks.
Liabilities
Each party shall pay, and hold the other harmless in respect of, each liability reflected on her and his last financial affidavit filed with the court. In addition, the plaintiff shall pay, within the 30 days following the date of this decree, and hold the defendant harmless from and against all obligations of Labieniec Inc. for which the defendant is or may be liable, including the obligation to Fleet Bank which is now the subject of a small claims action about which there was testimony.
Children's Assets
All assets in the name of either of the children shall be converted to accounts under the Uniform Gifts to Minors Act which shall require the signatures of both parties for withdrawals or other transactions. Each party shall provide to the other, within the 30 days following the date of this decree, copies of all documents concerning or evidencing such assets.
Tangible Personalty
The parties have entered into stipulations concerning their CT Page 1294 tangible personalty. In compliance with those stipulations, there is hereby awarded to each party the tangible personalty now in her or his possession or control, without any charge to the account of either party, except that any of the following items which are now in the possession or control of the defendant are hereby awarded to the plaintiff, who may take possession of them at any reasonable time selected by her, without any charge to her account:
 A.S. Labieniec Inc. pen and ink picture Kitchen table and four chairs from Savage Hill Plaintiff's Panasonic printer Weed whacker — gasoline powered Floor lamp next to recliner in the living room Brown bookcase and stool made by plaintiff's father Kitchen accessories Entire Pfaltzgraff dish set Blue butter dish Blue sugar bowl Wok Sandwich grill Plaintiff's cookbooks All Farberware pots and pans Spicebox on kitchen wall (shower present) Other shower presents Tablecloths
The plaintiff shall execute and/or deliver to the defendant all documents necessary to establish title in the defendant to a 1990 Toyota Corolla.
If the defendant is not now in possession or control of the parties' four snowmobiles, they are hereby awarded to him without any charge to his account.
Division of Assets
The defendant shall, within the 30 days following the date of this decree, assign to the plaintiff all of his stock in Labieniec Inc.
The plaintiff shall, within five days after the presentation to her or to her attorney by the defendant of a quitclaim deed conveying to the defendant all of her right, title and interest in and to the Savage Hill Road property, execute and deliver to CT Page 1295 the defendant, or to his attorney, such quitclaim deed together with any related real estate conveyance tax forms or returns. The defendant shall, as soon as possible after said delivery, pay in full the mortgage note now secured by a mortgage deed on the Savage Hill Road property in favor of the trust as well as the mortgage note now secured by a mortgage deed on said property in favor of American Savings.
There is awarded from the Vermont escrow the sums of $76,807.97 to the plaintiff and $10,354.82 to the defendant, and Attorney Crawford shall make those distributions immediately. In addition, one-half of any interest earned on the Vermont escrow, which brings its balance to a figure in excess of $87,162.79, is awarded to each of the parties, and Attorney Crawford shall also make those distributions immediately.
There is awarded to the defendant the following assets which are now held jointly by the parties:
 Luther Medical Products $ 266.25 UTC stock 2,660.00 PLM Growth Fund 10,763.25 20 Century 4,125.46
Exemptions
The defendant shall be entitled to claim Kristi as an exemption for federal and state income tax purposes, and for any other tax purposes, and the plaintiff shall be entitled to claim James as an exemption for such purposes.
Maiden Name
The plaintiff is restored to her maiden name, Margaret Labieniec.
George Levine, Judge